E. MARTIN ESTRADA
United States Attorney
SEAN D. PETERSON
Assistant United States Attorney
Chief, Riverside Branch Office
JOHN A. BALLA (Cal. Bar No. 295474)
CORY L. BURLESON (Cal. Bar No. 322239)
Assistant United States Attorneys
Riverside Branch Office
    3403 Tenth Street, Suite 200
    Riverside, California 92501
    Telephone: (951) 276-6246/6945
    Facsimile: (951) 276-6202
    E-mail:    john.balla@usdoj.gov
               cory.burleson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ED CR No. 20-00012-JGB |
|---|---|
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | Hon. Jesus G. Bernal |
| CHARLES KERTESZ, aka "Chad," | Trial Date:  January 17, 2023 |
| Defendant. | Trial Time:  9:00 a.m. Location:   Courtroom of the Hon. Jesus G. Bernal |

    Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorneys John A. Balla and
Cory L. Burleson, hereby submits its trial memorandum.

///

///

The United States respectfully requests the opportunity to supplement its trial memorandum if it becomes necessary.

Dated: January 13, 2023

Respectfully submitted,

E. MARTIN ESTRADA
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

SEAN D. PETERSON
Assistant United States Attorney
Chief, Riverside Branch Office

_____/s/_____
JOHN A. BALLA
CORY L. BURLESON
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## TABLE OF CONTENTS

DESCRIPTION                                                                    PAGE

**Table of Contents**

TABLE OF AUTHORITIES.................................................................ii

I.   STATUS OF THE CASE.............................................................1

     A.   Indictment...............................................................1

     B.   Discovery................................................................1

     C.   Trial....................................................................1

     D.   Pretrial Motions.........................................................3

II.  Elements.......................................................................4

     A.   The Statutes and Elements................................................4

III. FACTUAL SUMMARY................................................................5

IV.  LEGAL AND EVIDENTIARY ISSUES...................................................6

     A.   Photograph/Video Evidence................................................7

     B.   Defendant Must Establish a Prima Facia Case of Duress
          Before He is Entitled to a Duress Instruction............7

     C.   The Noticed Testimony of Defendant's Expert is Not
          Relevant Unless Defendant Establishes a Prima Facie
          Case for a Duress Defense...............................11

     D.   Using Suppressed Statements as Impeachment and
          Rebuttal................................................13

     E.   The United States is Entitled to Respond if Defendant
          Asserts that a Witness is Missing from Trial............15

V.   CONCLUSION....................................................................15

i

**TABLE OF AUTHORITIES**

DESCRIPTION                                                          PAGE

**Federal Cases**                                                   **Page(s)**

487 F. App'x 368 (9th Cir. 2012) ................................. 10

Bourjaily v. United States,
    483 U.S. 171 (1987) ......................................... 12

Doyle v. Ohio,
    426 U.S. 610 (1976) ......................................... 14

Edwards v. Baughman,
    2019 WL 1369931 (N.D. Cal. Mar. 26, 2019) ................... 14

Harris v. New York,
    401 U.S. 222 (1971) ......................................... 14

Paddack v. Dave Christensen, Inc.,
    745 F.2d 1254 (9th Cir. 1984) ......................... 12-13, 13

United States v. Blackwood,
    878 F.2d 1200 (9th Cir. 1989) ............................... 7

United States v. Chi Tong Kuok,
    671 F.3d 931 (9th Cir. 2012) ................................ 9

United States v. Contento-Pachon,
    723 F.2d 691 (9th Cir. 1984) ................................ 9

United States v. Gomez,
    725 F.3d 1121 (9th Cir. 2013) ............................... 14

United States v. Gudino,
    671 F. App'x 513 (9th Cir. 2016) ............................ 9

United States v. Houston,
    648 F.3d 806 (9th Cir. 2011) ................................ 10

United States v. Ibarra-Pino,
    657 F.3d 1000 (9th Cir. 2011) ........................... 8, 11

United States v. Jennell,
    749 F.2d 1302 (9th Cir. 1984) ............................... 8

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                                 <u>PAGE</u>

<u>United States v. King</u>,
   587 F.2d 956 (9th Cir. 1978) ................................... 7

<u>United States v. May</u>,
   622 F.2d 1000 (9th Cir. 1980) ................................. 7

<u>United States v. Moreno</u>,
   102 F.3d 994 (9th Cir. 1996) ............................. 10, 11

<u>United States v. Necoechea</u>,
   986 F.2d 1273, (9th Cir. 1993) ............................... 15

<u>United States v. Oaxaca</u>,
   569 F.2d 518 (9th Cir. 1978) .................................. 7

<u>United States v. Rosales-Aguilar</u>,
   818 F.3d 965 (9th Cir. 2016) ................................. 14

<u>United States v. Sahakian</u>,
   453 F.3d 905 (7th Cir. 2006) .............................. 9, 10

<u>United States v. Shields</u>,
   774 F. App'x 434 (10th Cir. 2019) ............................ 9

<u>United States v. Shryock</u>,
   342 F.3d 948 (9th Cir. 2003) .............................. 9, 10

<u>United States v. Smith</u>,
   591 F.3d 974 (8th Cir. 2010) .................................. 7

<u>United States v. Solorzano-Rivera</u>,
   368 F.3d 1073 (9th Cir. 2004) ................................. 8

<u>United States v. Stearns</u>,
   550 F.2d 1167 (9th Cir. 1977) ................................. 7

<u>United States v. Tokash</u>,
   282 F.3d 962 (7th Cir. 2002) .................................. 9

<u>United States v. Vasquez-Landaver</u>,
   527 F.3d 798 (9th Cir. 2008) ................................. 8

## TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                          PAGE

**Federal Statutes**

18 U.S.C. § 2 ...............................................  4

18 U.S.C. § 113 ..........................................  1, 4

**Other**

Fed. R. Evid. 401 ........................................  12

Fed. R. Evid. 901 ........................................  7

Federal Rule of Criminal Procedure 16 .........................  11

**I.   STATUS OF THE CASE**

    **A.   Indictment**

On January 15, 2020, a grand jury returned a two-count Indictment charging defendants Charles Kertesz ("defendant"), also known as "Chad," and Joshua Krepps, individually and aiding and abetting each other, with assault with a dangerous weapon, namely tennis shoes, in violation of 18 U.S.C. § 113(a)(3), and assault resulting in serious bodily injury, in violation of 18 U.S.C. § 113(a)(6).  (Dkt. No. 1.)

Krepps pleaded guilty to both counts of the Indictment on April 26, 2021 (Dkt. Nos. 29, 74), and his sentencing is currently scheduled for February 27, 2023 (Dkt. No. 75).

The United States moved to dismiss the assault with a dangerous weapon charge against defendant.  Defendant denies the remaining charge and has entered a not guilty plea.

    **B.   Discovery**

To date, the United States has produced investigative reports, medical reports, inmate records, surveillance footage, photographs, and real estate records.  On January 11, 2023, defense counsel produced transcripts of two recorded interviews with Krepps.  Defense counsel has not otherwise produced any reciprocal discovery.

    **C.   Trial**

        1.   <u>Trial Date</u>

The trial is scheduled for January 17, 2023, at 9:00 a.m., before the Honorable Jesus G. Bernal, United States District Judge.

        2.   <u>Estimated Time</u>

The United States expects its case-in-chief to last about one and a half days.  The United States anticipates calling four

witnesses in its case-in-chief: (1) BOP Senior Officer Specialist
Michael Pearce, who the United States expects will testify about the
recreational yard at United States Penitentiary at Victorville,
California ("USPV"), the events on the yard before the assault on
August 31, 2018, and what he saw and did during the assault; (2) BOP
Case Manager Augustin Rangel, who the United States expects will
testify about what he observed when responding to the assault and
what defendant told him after the assault; (3) BOP Senior Officer
Specialist Dennis McKinley, who the United States expects will
testify about the events on the yard before the assault and what he
observed when responding to the assault; and (4) Victim W.P., who the
United States expects will testify about the assault, the injuries he
sustained from the assault, and prior instances where he has been
assaulted because of his sexual orientation.

### 3.   Exhibits

The United States will seek to admit about fifteen exhibits at
trial.  These include video surveillance footage, photographs of the
location the assault, photographs of the victim following the
assault, and maps of United States Penitentiary, Victorville
("USPV").  The parties have not yet reached an agreement regarding
the admissibility of these exhibits.

### 4.   Stipulations

The parties filed a stipulation to exclude certain evidence from
trial on December 21, 2022 (Dkt. No. 88), and the Court entered an
order regarding the stipulation on January 4, 2023 (Dkt. No. 90).
The stipulation and order exclude: (i) evidence of defendant's
criminal history; (ii) evidence of BOP's inmate disciplinary process
concerning the assault; and (iii) evidence of any correctional

institution's disciplinary investigations, finding, and discipline relating to defendant.

During the pretrial conference on January 9, 2023, the parties stipulated that non-expert witnesses will be excluded during trial.

5.  <u>Defendant's Custody Status</u>

Defendant is currently in custody pending trial.

**D.   Pretrial Motions**

Defendant and the United States filed pretrial motions in this case.  Defendant filed a motion to suppress certain statements made by defendant to BOP Special Investigative Services Technician ("SIS Tech.") Brent Bouche following the assault.  (Dkt. No. 36.)  The United States did not oppose the motion and agreed to self-suppress defendant's statements to Bouche, but the United States specifically reserved "the right to offer defendant's statements to SIS Tech. Bouche during trial as impeachment, as rebuttal, or for any other purpose the Court may deem appropriate at the time." (Dkt. No. 38.) Thereafter, the Court granted defendant's motion.  (Dkt. No. 52.)

The United States filed a motion for finding of legislative fact that USP Victorville is within the special maritime and territorial jurisdiction of the United States.  (Dkt. No. 68.)  Defendant opposed the motion (Dkt. No. 71), and the United States filed a reply (Dkt. No. 73).  During the pretrial conference, the Court indicated that it would grant the United States' motion in part, finding as an adjudicative fact that USPV is within the special maritime and territorial jurisdiction of the United States.

The United States also filed a motion in limine to exclude any evidence that USP Victorville is not in the special maritime and territorial jurisdiction of the United States.  (Dkt. No. 84.)

Defendant filed an opposition to the motion.  (Dkt. No. 89.)  During the pretrial conference, the Court indicated that it would permit defendant to introduce limited evidence to rebut the presumption of the judicially noticed fact that USPV is within the special maritime and territorial jurisdiction of the United States.

On January 12, 2023, the Court granted the Unites States' motion and dismissed count one of the Indictment, which charged defendant with assault with a dangerous weapon, namely tennis shoes, in violation of 18 U.S.C. § 113(a)(3).  (Dkt. No. 106.)

**II.  Elements**

**A.    The Statutes and Elements.**

The elements of the offense charged in Count Two, assault resulting in serious bodily injury, in violation of 18 U.S.C. § 113(a)(6), are as follows:

First, the defendant assaulted W.P. by intentionally striking or wounding him;

Second, as a result, W.P. suffered serious bodily injury; and

Third, the assault took place at the United States Penitentiary in Victorville, California.

"Serious bodily injury" means bodily injury that involves (1) a substantial risk of death; (2) extreme physical pain; (3) protracted and obvious disfigurement; or (4) protracted loss or impairment of the function of a body part, organ, or mental faculty.  See Ninth Circuit Model Criminal Jury Instructions, No. 8.8 (2022 ed.).

This count includes allegations of aiding and abetting.  The Ninth Circuit model instructions for aiding and abetting under 18 U.S.C. § 2(a) are as follows:

4

1    Defendant may be found guilty of assault of assault resulting in serious bodily injury even if the defendant personally did not commit the act or acts constituting the crime but aided and abetted in its commission.  To "aid and abet" means intentionally to help someone else commit a crime.

    To prove the defendant guilty of assault resulting in serious bodily injury by aiding and abetting, the government must prove each of the following beyond a reasonable doubt:

    First, assault resulting in serious bodily injury was committed by someone;

    Second, the defendant aided, counseled, commanded, induced or procured that person with respect to at least one element of assault resulting in serious bodily injury;

    Third, the defendant acted with the intent to facilitate assault resulting in serious bodily injury; and

    Fourth, the defendant acted before the crime was completed.

    It is not enough that the defendant merely associated with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person or was present at the scene of the crime.  The evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping that person commit assault resulting in serious bodily injury.

    A defendant acts with the intent to facilitate the crime when the defendant actively participates in a criminal venture with advance knowledge of the crime.

    The government is not required to prove precisely which defendant actually committed the crime and which defendant aided and abetted.

    See Ninth Circuit Model Criminal Jury Instructions, No. 4.1 (2022 ed.) (modified to reflect facts of the case).

**III. FACTUAL SUMMARY**

    The United States anticipates the evidence at trial to establish the following:

    On August 31, 2018, defendant, Krepps, and Victim W.P. were inmates at USPV.  USPV is within the special maritime and territorial jurisdiction of the United States.

That morning, the white inmate population held a short meeting on the recreational yard at USPV.  Shortly thereafter, at about 8:15 a.m., defendant and Krepps confronted Victim W.P. just outside the toilet area, took him to the ground, and assaulted him.  Pearce was the first official to notice.  He radioed for other officials to come assist before firing two warning shots and verbally warning defendant and Krepps to stop.  They didn't stop, and Pearce became especially concerned because Victim W.P. was motionless.  Krepps appeared to be striking Victim W.P. with what looked like a stabbing motion while defendant held Victim W.P. in a chokehold.  Pearce then fired a live round at the ground, again as a warning shot, but the assault continued.  Pearce fired a second live round aiming at Krepps's body, but he missed.  Finally, he fired a third live round and hit Krepps in the legs.  Krepps then fell off Victim W.P., and other guards arrived shortly thereafter to break everyone up.

During the assault, Victim W.P. was knocked unconscious, and he soiled himself.  After the assault ended, Victim W.P. was treated at USPV's health services before being transported to a hospital, where he spent four days.  Victim W.P. suffered multiple lacerations and swelling throughout his head and upper body.  He also suffered three broken ribs, a broken nose, and an injury to his shoulder.

Victim W.P. is gay, and other white inmates at USPV had recently learned that he was gay.  He arrived at USPV not long before his assault.  He had been assaulted at other institutions for being gay, including the most recently institution from which he transferred.

## IV.  LEGAL AND EVIDENTIARY ISSUES

Below are legal and evidentiary issues that the United States anticipates may arise during trial.

**A.    Photograph/Video Evidence**

The United States intends to introduce photographs and video recordings of the USPV recreational yard and photographs of Victim W.P. following the assault.

Photographs are generally admissible as evidence.  See United States v. Stearns, 550 F.2d 1167, 1171 (9th Cir. 1977) (saying that photographs of crime scene admissible).  Photographs should be admitted so long as they fairly and accurately represent the event or object in question.  United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978).  The Ninth Circuit has held that "[p]hotographs are admissible as substantive as well as illustrative evidence."  United States v. May, 622 F.2d 1000, 1007 (9th Cir. 1980).

A video recording is admissible upon a showing that it is "accurate, authentic, and generally trustworthy."  United States v. King, 587 F.2d 956, 961 (9th Cir. 1978).  For example, testimony that a recording depicts evidence that the witness observed is sufficient to authenticate the recording.  Fed. R. Evid. 901(b); United States v. Smith, 591 F.3d 974, 979-80 (8th Cir. 2010).

There is no rigid set of requirements to lay the foundation for photographic and video evidence.  As long as the United States makes a prima facie showing of authenticity, the "probative force of the evidence offered is, ultimately, an issue for the jury."  United States v. Blackwood, 878 F.2d 1200, 1202 (9th Cir. 1989).

**B.    Defendant Must Establish a Prima Facia Case of Duress Before He is Entitled to a Duress Instruction**

Although defendant has not directly noticed his intent to present a duress defense at trial, defendant sent the government an expert notice on January 4, 2023, suggesting that defendant may do

7

so.  Defendant cannot receive a duress jury instruction unless he proffers or introduces admissible evidence sufficient to make a prima facie case, and he should not be allowed to discuss duress in jury selection or in his opening statement unless he makes a pretrial offer of proof.

But "defendant is not entitled to present a duress defense at trial or receive a jury instruction on duress unless the defendant makes a prima facie showing of duress in a pretrial offer of proof, or in evidence presented at trial."  United States v. Ibarra-Pino, 657 F.3d 1000, 1004 (9th Cir. 2011) (internal citations omitted).  To make such a prima facie showing, the defendant must establish: "(1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) lack of a reasonable opportunity to escape the threatened harm."  Id. (quoting United States v. Vasquez-Landaver, 527 F.3d 798, 802 (9th Cir. 2008)); see also United States v. Jennell, 749 F.2d 1302, 1305 (9th Cir. 1984) ("[F]ear alone is not enough to make a prima facie case of duress.").  "In the absence of a prima facie showing of duress, evidence of duress is irrelevant and may be excluded, and a jury instruction is not appropriate."  Vasquez-Landaver, 527 F.3d at 802.  Ultimately, the defendant has the burden to prove duress by a preponderance of the evidence.  See United States v. Solorzano-Rivera, 368 F.3d 1073, 1081 (9th Cir. 2004).

Defendant has to carry a heavy burden to present a duress defense at trial.  Under Ninth Circuit law, he has to establish that he faced a threat that was "present, immediate, or impending, such that his persecutors figuratively held a gun to his head."  Vasquez-Landaver, 527 F.3d at 802 (cleaned up).  Moreover, duress is

construed "narrowly" in the prison context.  See United States v.
Shields, 774 F. App'x 434, 438 (10th Cir. 2019); United States v.
Sahakian, 453 F.3d 905, 909 (7th Cir. 2006).  Because "prisons are
inherently dangerous places and are inhabited by violent people," it
is not enough that a defendant has a "fear of potential future
violence."  United States v. Tokash, 282 F.3d 962, 970 (7th Cir.
2002).  He must demonstrate that the "threat was immediate and that
there was no reasonable alternative to violating the law."  Id. at
971.  If the standard were otherwise, then the "absurd result would
be that every inmate in any prison across the country could justify
their possession of a weapon simply by articulating a fear of some
future, possible, and generalized threat."  Id. at 970.

Defendant will likely not provide any admissible evidence that
he faced an immediate threat of violence.  Under Ninth Circuit case
law, it is "clear that to be immediate, a threat must be specific: 'A
veiled threat of future unspecified harm will not satisfy this
requirement.'"  United States v. Chi Tong Kuok, 671 F.3d 931, 948
(9th Cir. 2012) (quoting United States v. Contento-Pachon, 723 F.2d
691, 694 (9th Cir. 1984)).  Thus, the Ninth Circuit has repeatedly
affirmed the rejection of duress defenses when the proffered threat
"did not include a specific time frame, and lacked detail," id., and
when the threat was "neither 'specific' nor 'direct,'" United States
v. Gudino, 671 F. App'x 513, 514-15 (9th Cir. 2016) (quoting Chi Tong
Kuok, 671 F.3d at 948-49).  Moreover, "[m]ere assertions are not
sufficient to establish a prima facie case of duress."  United States
v. Shryock, 342 F.3d 948, 988 (9th Cir. 2003).  Rather, defendant has
to proffer objective facts showing that he faced an immediate threat.
See id. (rejecting claim that the defendant could not escape because

he "baldly asserts that he could not flee the reach of the Mexican Mafia, and law enforcement could not protect him").

Defendant also will not provide any admissible evidence that he lacked a reasonable opportunity to escape any threatened harm.  The Ninth Circuit has repeatedly held that a defendant may not assert a duress defense when he hasd the opportunity to escape and seek help from the authorities.  See United States v. Houston, 648 F.3d 806, 817 (9th Cir. 2011); Shryock, 342 F.3d at 988; United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996).  The same principle applies in prison.  In United States v. Lippitt, for example, the defendant argued that he should have been allowed to present a duress defense because "a 'prison code' among convicts required him to assault [a victim] or be assaulted himself."  487 F. App'x 368, 368 (9th Cir. 2012).  The Ninth Circuit affirmed the rejection of the proposed defense because the defendant "failed to show that he had no reasonable opportunity to escape that assault."  Id. at 369.  Even if he feared that he would be assaulted, the defendant "could have sought help from prison administration officials."  Id.; see also United States v. Houston, 648 F.3d 806, 817 (9th Cir. 2011) (same); United States v. Sahkian, 453 F.3d 905, 910 (7th Cir. 2006) ("[T]here are an abundance of legal alternatives to [violent conduct] in prison, such as filing a proper administrative grievance with prison officials or requesting . . . to be placed in protective custody or segregation. . . . If prisoners could decide for themselves when to seek protection from the guards and when to settle matters by violence, prisons would be next to impossible to regulate.  The guards might as well throw the inmates together, withdraw the perimeter, and let them kill one another.").

Similarly, in Moreno, the Ninth Circuit concluded that a defendant could not show that he lacked a reasonable opportunity to escape a threatened harm where his "encounter with [law enforcement] presented a clear opportunity for [the defendant] to save himself and alert authorities about the threat to his family," but the defendant did not take advantage of it.  102 F.3d at 997-98 (affirming district court's decision to preclude duress defense).  And in Ibara-Pino, the Ninth Circuit ruled that a defendant could not show he lacked a reasonable opportunity to escape a threatened harm where his "encounter with the authorities at the border presented [him] with the opportunity to escape the threatened harm and notify the authorities about the threats to his family," but he did not.  657 F.3d at 1006 (affirming district court's denial of request for duress jury instruction).

In light of the Ninth Circuit's holdings in Lippett, Moreno, and Ibara-Pino, this Court should preclude discussion of duress during jury selection and opening statement, preclude any evidence of duress at trial, and decline to give a jury instruction on duress absent a proffer of admissible evidence from the defendant.

**C.   The Noticed Testimony of Defendant's Expert is Not Relevant Unless Defendant Establishes a Prima Facie Case for a Duress Defense**

On January 4, 2022, defendant gave notice under Federal Rule of Criminal Procedure 16 of his intent to call Mr. R. Tim Gravette as an expert witness at trial.  The notice indicates that Mr. Gravette may be called to testify about seven topics: (1) prison politics; (2) white inmate population; (3) the recreational yard; (4) violence in the penitentiary; (5) familiarity with BOP departments, policies,

1    procedures, and practices; (6) inmate central files; and (7) the

2    facts giving rise to this case.

3        These topics relate to defendant's expected duress defense.

4    However, as explained in Section IV.B, supra, defendant must

5    establish a prima facie case for duress before presenting evidence of

6    a duress defense and before a duress instruction is given to the

7    jury.  And if defendant is not entitled to present evidence of a

8    duress defense and is not entitled to a duress jury instruction, then

9    Mr. Gravette's expected testimony will be irrelevant.  Indeed, such

10   testimony would not bear on any element of the charged crime, and if

11   it does not bear on an element of the charged crime or an affirmative

12   defense submitted to the jury, it does not bear on any "fact . . . of

13   consequence in determining the action."  Fed. R. Evid. 401.

14       Further, defendant cannot "bootstrap" the relevance of Mr.

15   Gravette's testimony with Mr. Gravette's own testimony about

16   inadmissible evidence upon which he relied.  Cf. Bourjaily v. United

17   States, 483 U.S. 171, 177 (1987) (using the term "bootstrapping" to

18   describe the analogous impermissible practice of relying solely on

19   hearsay statements of co-conspirators to establish defendant's

20   participation in a conspiracy, which is required to establish the

21   admissibility of hearsay under the co-conspirator-statements

22   exception).  Defendant's expert notice suggests that he intends to

23   elicit testimony from Mr. Gravette about hearsay statements by, among

24   others, the co-defendant in this case.  Expert witnesses are allowed

25   to give limited testimony about the inadmissible hearsay upon which

26   they relied to form their opinions, but only for the purpose of

27   explaining the bases of their opinions.  Paddack v. Dave Christensen,

28   Inc., 745 F.2d 1254, 1261-62 (9th Cir. 1984) ("[Federal Rule of

Evidence] 703 merely permits such hearsay, or other inadmissible evidence, upon which an expert properly relies, to be admitted to explain the basis of the expert's opinion. . . . It does not allow the admission of the [statements] to establish the truth of what they assert."). "Upon admission of such evidence, it then, of course, becomes necessary for the court to instruct the jury that the hearsay evidence is to be considered solely as a basis for the expert opinion and not as substantive evidence." Id.

For that reason, Mr. Gravette's testimony is only relevant if defendant can establish prima facie duress with other admissible evidence about what happened in this case, independent of Mr. Gravette's testimony about the inadmissible evidence upon which he relied. The jury could not consider that inadmissible evidence to prove the truth of the matters asserted therein, and the Court could not consider it in deciding whether defendant has made a prima facie case of duress. Therefore, the Court should exclude Mr. Gravette's testimony as irrelevant unless defendant proffers other admissible evidence constituting prima facie duress.

**D.   Using Suppressed Statements as Impeachment and Rebuttal**

As noted above, the United States agreed to self-suppress statements that defendant made to SIS Tech. Bouche after the assault. Specifically, when defendant was asked why he assaulted Victim W.P., defendant told Bouche: "The guy is a fag and he should have known better to be on this yard. Homos are not allowed on this yard." The United States specifically reserved the right to use those statements for impeachment or rebuttal purposes. (Dkt. No. 38.)

"Statements obtained in violation of Miranda generally are inadmissible in the government's case-in-chief," but "[i]t does not

13

1  follow from Miranda that evidence inadmissible against the accused in

2  the prosecution's case in chief is barred for all purposes . . . ."

3  United States v. Gomez, 725 F.3d 1121, 1126 (9th Cir. 2013) (quoting

4  Harris v. New York, 401 U.S. 222, 224 (1971)).  "The shield provided

5  by Miranda cannot be perverted into a license to use perjury by way

6  of a defense . . . ."  Harris, 401 U.S. at 226.  For that reason,

7  voluntary statements taken in violation of Miranda are still

8  admissible as impeachment evidence.  Gomez, 725 F.3d at 1126.

9       Allowing the government to use this evidence to impeach or rebut

10 the defendant's evidence "promotes what the Supreme Court . . .

11 recognized as an important value: 'the truth-seeking function of a

12 trial.'"  Id. at 1128 (quoting Doyle v. Ohio, 426 U.S. 610, 617 n.7

13 (1976)).  This is true whether defendant himself testifies or whether

14 he made inconsistent statements to his expert witness.  See United

15 States v. Rosales-Aguilar, 818 F.3d 965, 969-70 (9th Cir. 2016); see

16 also Edwards v. Baughman, 2019 WL 1369931, at *8-10 (N.D. Cal. Mar.

17 26, 2019) ("Disallowing use of Edwards' statements to the police

18 would have distorted the truth-seeking purpose of the sanity trial as

19 it would have deprived the parties of information about statements

20 highly relevant to Edwards' state of mind on the day he killed the

21 victim.").

22      Applied here, if defendant presents evidence of his statements

23 that are inconsistent with the statements he made to SIS Tech. Bouche

24 following the assault, the United States should be permitted to use

25 those statements as impeachment and rebuttal.

26

27

28

### E.   The United States is Entitled to Respond if Defendant Asserts that a Witness is Missing from Trial

The United States anticipates that defendant may argue that the United States failed to call a witness with information about the case at trial.  While defendant is entitled to highlight the absence of corroborating evidence and attack the adequacy of the United States' evidence, so too may the United States.  The United States may decide to argue in closing, so long as it is clear that the United States is not burden shifting, that defendant could subpoena witnesses himself to present evidence.  See United States v. Necoechea, 986 F.2d 1273, 1282, (9th Cir. 1993) ("A prosecutor is entitled to comment on a defendant's failure to present witnesses so long as it is not phrased to call attention to defendant's own failure to testify.").

## V.   CONCLUSION

To the extent that additional substantive or evidentiary issues arise, the United States respectfully requests leave to file supplemental trial memoranda before or during trial.